# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WRONGFUL DEATH ESTATE OF
ROSEMARY NAEGELE,

     Plaintiff,

v.                                                                    Civ. No. 19-1165 GBW/SMV

MUHAMMAD KHAWAJA,

     Defendant.

## <u>ORDER GRANTING SUMMARY JUDGMENT ON ALL CLAIMS</u>

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support Based on Statute of Limitations. *Doc. 24.* Having reviewed the Motion (*doc. 24*) and its attendant briefing (*docs. 28, 31*), the Court GRANTS the Motion and DISMISSES all of the claims in Plaintiff's complaint with prejudice.[1]

## I.    UNDISPUTED FACTS

On February 17, 2017, Rosemary Naegele underwent a cholecystectomy at Nor-Lea General Hospital, a health care center operated by the Nor-Lea Hospital District (hereinafter "Hospital District"). *Doc. 1* at 5; *doc 4* at 2; *doc. 24* at 23. The Hospital District is a tax-exempt New Mexico Special Hospital District and a governmental

---

[1] Defendant has also filed a motion for summary judgment on the issue of punitive damages. *Doc. 36.* The Court DENIES this motion as MOOT because granting the instant motion for summary judgment on the issue of statute of limitations dismisses all of Plaintiff's claims with prejudice.

entity.  *Doc. 24* at 6–7; *doc. 28*.  Following her surgery, Defendant, a physician hired by the Hospital District under a Physician Employment Agreement, admitted her to the hospital under his care.  *See doc. 1* at 4; *doc. 4* at 1; *doc. 24* at 7–22; *doc. 28* at 2–4.  The following day, Defendant discharged Ms. Naegele from the hospital.  *Doc. 1* at 6, *doc. 4* at 2.  Later that day, she died.  *Doc. 24* at 2, *doc. 28* at 4.

Shortly after Ms. Naegele's death, her siblings, who constitute her wrongful death estate, consulted with an attorney about bringing a wrongful death action against the Hospital District.  *Doc. 24* at 2, 26, 29, 31, 33, 35; *doc. 28* at 4.  On March 1, 2017, their then-attorney sent a Notice of Claim pursuant to N.M. Stat. Ann. § 41-4-16 to the Hospital District.  *Doc. 24* at 2, 23; *doc. 28* at 4.  The notice stated that "[a]t this time, it appears that [Ms. Naegele] was not properly monitored and treated by hospital agents and/or staff during her post-operative stay" and that "[s]he was discharged from Nor-Lea General Hospital in an unstable condition…."  *Doc.* 24 at 23.

Over two years later, on May 21, 2019, Plaintiff, now represented by current counsel, filed an Application for Review of Medical Care and Treatment against Defendant with the New Mexico Medical Review Commission.  *Doc. 24* at 2, 36; *doc. 28* at 4–5.  During the proceedings before this Commission, Defendant did not raise a statute of limitations defense.  *Doc. 28* at 5; *doc. 31* at 2.  Defendant did, however, notice Plaintiff that he "reserves the right to raise, in any lawsuit filed against [him], any and all legal defenses available to him and that [his] participation in these proceedings is not

a waiver of any such defenses." *Doc. 31* at 14.  On September 18, 2019, the Commission

found that "there was substantial evidence of professional negligence on the part of

[Defendant]." *Doc. 28-2* at 1.

On November 15, 2019, Plaintiff filed this medical malpractice suit against

Defendant in the First Judicial District Court of Santa Fe County.  *Doc. 1* at 4.  Plaintiff

alleges that Defendant was negligent in his discharge of and care for Ms. Naegele.  *Id.* at

7.  On December 11, 2019, Defendant removed the case to this Court.  *Id.* at 1.  On

August 20, 2020, Defendant filed the instant motion for summary judgment.  *Doc. 24.*

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

movant bears the initial burden of "show[ing] 'that there is an absence of evidence to

support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d

887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once

the movant meets this burden, the non-moving party is required to designate specific

facts showing that "there are . . . genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

### III.   ANALYSIS

The parties do not dispute any relevant, material facts.[2]  *See doc. 28* at 3–5; *doc. 31* at 1–3.  Rather, they dispute which statute of limitations/repose applies to these facts and whether Defendant may raise this defense.  *See generally docs. 24, 28, 31.*  Defendant asserts that the two-year statute of limitations in the New Mexico Tort Claims Act (hereinafter "TCA") bars all of Plaintiff's claims against him because he was a public employee when he treated and discharged Ms. Naegele and Plaintiff failed to file suit against him within two years of discovering the occurrence and cause of Ms. Naegele's death.  *Doc. 24* at 3–4.

Plaintiff does not contest that the TCA statute of limitations bars its claims if it applies and Defendant may raise it.[3]  *See doc. 28.*  Rather, it argues the following: (i) the three-year statute of repose in the New Mexico Medical Malpractice Act (hereinafter "MMA") applies to its claims instead of the TCA statute of limitations because Defendant was an independent contractor for, not an employee of, the Hospital District, *id.* at 7–10; (ii) this statute of repose controls even if Defendant was an employee of the

_____

[2] The parties do dispute whether Defendant was an employee of the Hospital District.  *See doc. 24* at 2, *doc. 28* at 3.  This dispute, however, is legal, rather than factual, in nature.  The parties do not disagree about Defendant's job description, compensation, or any other fact related to the work that Defendant performed for the Hospital District.  Rather, they disagree about whether, based on these undisputed facts, Defendant was an independent contractor for, or employee of, the Hospital District.

[3] The TCA statute of limitations starts to run "when the plaintiff knows or with reasonable diligence should have known of the injury and its cause."  *Maestas v. Zager*, 152 P.3d 141, 147 (N.M. 2007).  Defendant alleges that Plaintiff knew of Ms. Naegele's death and its cause on or before March 1, 2017 when Plaintiff sent a Notice of Claim to the Hospital District.  *Doc. 24* at 4.  Plaintiff offers no facts or evidence to contest this allegation.  *See doc. 28.*

Hospital District because he was also a qualified health care provider at the time, *id.* at 12–15;[4] and (iii) Defendant is estopped from raising the TCA statute of limitations defense because he failed to assert it during the proceedings before the New Mexico Medical Review Commission, *id.* at 15–17.

All of Plaintiff's arguments fail. The two-year statute of limitations in the TCA applies to its suit against Defendant because he is a public employee and its application to Defendant, notwithstanding his status as a qualified health care provider, conforms with the legislative intent behind the TCA and MMA. Defendant is also not estopped from raising this defense. Therefore, all the claims that Plaintiff asserts in its complaint are time-barred.

### 1. *Defendant Was a Public Employee, Not an Independent Contractor, When He Treated and Discharged Ms. Naegele*

Under the TCA, a public employee is "an officer, employee, or servant of a governmental entity, excluding independent contractors."[5] N.M. Stat. Ann. § 41-4-3(F).

---

[4] Plaintiff also asks the Court to certify to the New Mexico Supreme Court the question of what statute of limitations/repose applies to a public employee who is also a qualified health care provider as it "may be determinative of an issue in pending litigation … and there is no controlling appellate decision, constitutional provision, or statute." *Doc. 28* at 11 (quoting N.M. Stat. Ann. § 39-7-4). Federal courts, however, should not run to a state supreme court "every time an arguably unsettled question of state law comes across [their] desks." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). If, like the issue here, there is a reasonably clear and principled course for resolution, then the federal court should resolve the matter. *See id.* (citations omitted).

[5] The TCA also provides that the following independent contractors are public employees: (i) licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract; (ii) members of the board of directors of the New Mexico insurance pool; (iii) licensed medical, psychological or dental arts practitioners providing services to the children, youth and families department pursuant to contract; (iv) volunteers, employees and board members of court-appointed special advocate programs; (v) individuals participating in the state's adaptive driving

An independent contractor is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Harger v. Structural Servs., Inc.*, 916 P.2d 1324, 1331 (N.M. 1996) (quoting Restatement (Second) of Agency § 2 (1958)).  "A right to control analysis focuses on whether the principal exercised sufficient control over the agent to hold the principal liable for the acts of the agent." *Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004) (citing *Harger*, 916 P.2d at 1334).

The Supreme Court of New Mexico, however, has cautioned that "the right to control approach may not always be the most appropriate test, particularly for a professional" like a physician.  *Id.* at 242–43.  Where a worker is a professional, the Supreme Court of New Mexico has adopted the Second Restatement of Agency § 220 as the framework for deciding whether the worker is an employee or independent contractor under the TCA.  *See id.* at 243.  Therefore, in determining whether an individual is an independent contractor, New Mexico law requires courts to consider the totality of circumstances, including but not limited to:

(a) [T]he extent of control which, by the agreement, the master may exercise over the details of the work;
(b) [W]hether or not the one employed is engaged in a distinct occupation or business;

---

program while using a special-use state vehicle for evaluation and training purposes in that program.  *See* N.M. Stat. Ann. § 41-4-3(F).  None of these provisions is relevant to Defendant's employment with the Hospital District.

(c) [T]he kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) [T]he skill required in the particular occupation;

(e) [W]hether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) [T]he length of time for which the person is employed;

(g) [T]he method of payment, whether by the time or by the job;

(h) [W]hether or not the work is part of the regular business of the employer;

(i) [W]hether or not the parties believe they are creating the relation of master and servant; and

(j) [W]hether the principal is or is not in business.

Restatement (Second) of Agency § 220(2).[6] "However, no particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive." *Harger*, 916 P.2d at 1334. And, "[a]ny determination based on only one or two of the factors … and contrary to inferences supported by the remainder of the evidence … need[s] to be of such a clear and definite nature as to be nearly overwhelming." *Id.*

Applying the Second Restatement of Agency factors to Defendant's Physician Employment Agreement[7] leads to a clear result regarding the nature of Defendant's

---

[6] When adopting the Second Restatement of Agency § 220 as the framework for deciding whether an individual is an employee or an independent contractor, the Supreme Court of New Mexico provided a non-exhaustive list of factors for lower courts to consider. *See Celaya*, 85 P.3d at 243. These factors are identical to those of the Restatement except for the omission of Second Restatement of Agency § 220(2)(b). The omission, however, is not of particular import as the Supreme Court of New Mexico acknowledges that "complete analysis may require an assessment not only of the relevant factors enumerated in the Restatement, but of the circumstances unique to the particular case." *Id.* (citing *Harger*, 916 P.2d at 1334).

[7] Under New Mexico law, the nomenclature used by the parties in "contractual provisions do[es] not control the determination of whether [an individual] was an employee or an independent contractor." *See Houghland v. Grant*, 891 P.2d 563, 566 (N.M. Ct. App. 1995). Courts are to define an employment relationship with respect to the facts of the entire case rather than the terms that the parties assign to it. *See id.* Nonetheless, the Court's analysis relies upon Defendant's Physician Employment Agreement

relationship with the Hospital District when he treated and discharged Ms. Naegele. While Defendant did provide skilled services and worked for the Hospital District for only a short period of time, the balance of the factors firmly establishes that he was an employee, not an independent contractor:  The Hospital District not only exercised control over many of the details of Defendant's work but also provided him with the facilities and resources he needed to perform it; Defendant's compensation was based on units of time rather than units of work; his work was essential to the Hospital District's regular business; and Defendant and the Hospital District intended to form an employer-employee relationship, not an independent contractor one.

      a.   *The Control that the Hospital District Exercised over Defendant's Work Strongly Indicates that He Was a Public Employee, Not an Independent Contractor*

The control that the Hospital District had over many of the details of the medical services that Defendant rendered to its patients strongly supports a finding that he was an employee, not an independent contractor.  "[T]he control or right to control needed to establish the relation of master and servant may be very attenuated."  Restatement (Second) of Agency § 220 cmt. d.  This understanding is especially true in the medical context where "[a] physician's professional ethics require that he have 'free and complete exercise of his medical judgment and skill….'"  *See Lurch v. United States*, 719

---

because it is the only evidence before it about the specifics of Defendant's employment with the Hospital District and Plaintiff does not argue or provide evidence that Defendant's employment did not conform to the Agreement's terms.

F.2d 333, 337 (10th Cir. 1983) (quoting Principles of Medical Ethics § 6, *reprinted in*

Opinions and Reports of the American Medical Association Judicial Council, 5 (1977)).

The Physician Employment Agreement gave the Hospital District exclusive

control over where, when, and to whom Defendant provided medical services.  *See doc.*

*24* at 8–9, 22.  It specifies that Defendant was to "provide professional medical services

*exclusively* to Hospital [District] patients at such location or locations as determined by

Hospital [District]… [and] not engage in the practice of medicine except as an employee

of Hospital [District]…" absent the "express prior written consent of Hospital

[District]."  *Id.* at 8, 9 (emphasis added).  It also stipulates that Defendant was to "work

[a] 7 days on 7 days off schedule commencing at 8 AM on Monday and ending the

following Monday at 8 AM … [and] be physically present at change of shift on Monday

to handoff patients to new Hospitalist."  *Id.* at 22.

The Physician Employment Agreement also gave the Hospital District some

control over how Defendant provided these services.  Defendant was to "round on

inpatients twice a day once in the morning and again in the afternoon" and "treat

employees of Hospital [District], patients, business associates of Hospital [District] and

others in a manner consistent with Hospital [District]'s Standards of Behavior."  *Id.* at

12, 22.  That the Hospital District did not provide detailed supervision of Defendant's

treatment is not dispositive.  *See Celaya*, 85 P.3d at 244.  Some "services, like those of

…[a] physician … require special skills … [and] are not amenable to detailed performance management." *Id.*

Finally, Defendant also was subject to several Hospital District policies and regulations. "Requiring a physician to comply with a hospital's policies and procedures does not *per se* indicate that the hospital has sufficient control over the physician to indicate an employer-employee relationship." *Houghland v. Grant*, 891 P.2d 564, 567 (N.M. Ct. App. 1995) (citation omitted). Nonetheless, it is relevant to the inquiry. *See id.* at 566. *See also* Restatement (Second) of Agency § 220 cmt. *l* ("If the work is done upon the premises of the employer with his machinery by workmen who agree to obey general rules of regulation of the conduct of employees, the interference is strong that such workmen are the servants of the owner."). Per the Physician Employment Agreement, Defendant had to provide patient call coverage and professional medical care to patients in accordance with Hospital District Policies, and "comply with reasonable directives of Hospital [District]'s Chief of Staff or Medical Directors or Hospital [District] directives, rules, regulations, procedures, and/or Hospital [District] Policies." *Id.* at 9, 11, 15. If Defendant failed to follow these policies, the Hospital District could subject him to discipline. *Id.* at 10.

Plaintiff argues that Defendant's Physician Employment Agreement "doesn't provide for Hospital District control over [Defendant's] performance, but rather requires him to exercise his own professional judgment." *Doc. 28* at 9 (internal

quotation marks omitted).  However, a contractual provision precluding a hospital "from interfering with [a doctor's] exercise of his own professional judgment in his practice … is neither dispositive nor particularly material to whether [the doctor] was an employee of [the hospital] under the [TCA]." *Blea v. Fields*, 120 P.3d 430, 436 (N.M. 2005) (citations omitted).

It might also be argued that the Hospital District lacked control over Plaintiff because it could not terminate him at will.  *See Houghland*, 891 P.2d at 566 (citing *Savinsky v. Bromley Group, Ltd.*, 740 P.2d 1159, 1160 (N.M. Ct. App. 1987)).  The Physician Employment Agreement allows Defendant to cease working for the Hospital District with 30-day prior written notice but prevents the Hospital District from terminating him without cause.  *See doc. 24* at 11, 13.  Ability to terminate an employee at will, however, is but one factor a court must consider when evaluating the extent of the employer's right to control the details of an individual's work.  *See Houghland,* 891 P.2d at 566 (listing other factors).  Moreover, the for-cause protections that Defendant enjoyed did not limit the Hospital District's ability to control details of Defendant's work via the Physician Employment Agreement and/or Hospital District directives, rules, regulations, procedures, and policies.  *See doc. 24* at 11.

b. *The Skill Inherent in the Medical Services Provided by Defendant Somewhat Supports a Finding that He Is an Independent Contractor, but Is Not Dispositive*

The skill inherent in the full-time professional medical services that Defendant provided to patients on behalf of the Hospital District provides some support for the

argument that he was an independent contractor, not an employee.  Defendant

covenanted in his Physician's Employment Agreement that he "is experienced and

competent to provide professional medical services" and pledged to maintain both "a

valid and unrestricted license to practice medicine in the state of New Mexico" and "a

valid and unrestricted license or registration to prescribe drugs, medications or

controlled substances." *Id.* at 9.  There is no evidence in the record that he lacked this

experience, competency, and licensure.

However, Defendant's skill is not dispositive.  New Mexico courts have

expressly rejected the rule that the skill inherent in being a physician necessarily

renders a physician an independent contractor rather than an employee for the

purposes of tort liability.  *See Reynolds v. Swigert*, 697 P.2d 504, 508 (N.M. Ct. App. 1984).

New Mexico courts have also routinely found that physicians may be employees

despite the skill necessary for their positions.  *See, e.g., Blea*, 120 P.3d at 437; *Houghland*,

891 P.2d at 570; *Reynolds*, 697 P.2d at 508.

> c. *Defendant's Reliance on the Instrumentalities and Facilities Provided by the Hospital District for His Work Strongly Indicates that He Was a Public Employee, Not an Independent Contractor*

Defendant's reliance on the facilities and instrumentalities of the Hospital

District to perform his medical services strongly supports a finding that he is an

employee, not an independent contractor.  "[I]f the worker is using his employer's tools

or instrumentalities, especially if they are of substantial value, it is normally understood

that he will follow the directions of the owner in their use, and this indicates that the owner is a master."  Restatement (Second) of Agency § 220 cmt. k.  Under the Physician Employment Agreement, the Hospital District was to "furnish office space, equipment, instruments, supplies, medicines, and support personnel for the practice of [Defendant] as determined necessary by Hospital [District] in its sole discretion."  *Doc. 24* at 15.  The Agreement also provided some broad directions, rules, and regulations for how Defendant was to use the facilities and human resources provided.  *See id.* at 11–12.  There is no evidence before the Court that suggests that the Hospital District failed to provide these facilities and resources or that Defendant did not use the provided facilities and resources when rendering medical care to patients like Ms. Naegele.  Rather, the circumstances of Defendant's employment are similar to those of the salesperson in Illustration Six of the Second Restatement of Agency.  There, the authors assert that a salesperson who "agrees to give substantially his full time to the employment and who is furnished a car by [his] employer" is that employer's servant.  Restatement (Second) of Agency § 220 cmt. k, illus. 6.  Like this salesperson, Defendant provided full-time services for the Hospital District, *see doc. 24* at 8, and received the materials necessary to perform these services from the Hospital District, *see id.* at 15.

Plaintiff cites, as evidence that Defendant is an independent contractor, that the Physician Employment Agreement allowed Defendant "to supply additional items if he deemed it necessary for his practice."  *Doc. 28* at 4 (citing *doc. 24* at 9).  This observation

is unconvincing.  First, Defendant had to obtain the prior consent of the Hospital

District to use these items on its premises and with its patients.  *See 24* at 15.  Second,

Plaintiff has not provided any evidence that Defendant ever used his own instruments

to treat patients while working for the Hospital District, let alone to treat and discharge

Ms. Naegele.

> d.  *The Length and Compensation Structure of Defendant's Work for the Hospital*
> *District Strongly Indicate that He Was a Public Employee, Not an Independent*
> *Contractor*

The length and compensation structure for the medical services that Defendant

provided for the Hospital District strongly indicate that he was an employee of the

Hospital District, not an independent contractor.  Payment by unit of time rather than

unit of output is a powerful indication that the person performing the work is an

employee, not an independent contractor.  *See* Restatement (Second) of Agency § 220

cmt. j.  Here, Defendant was paid not by the number of patients he saw but rather by

the number of days that he worked.  Under the Physician Employment Agreement, his

base compensation for the six-month period of his employment was $1,900 per twenty-

four-hour day in accordance with the Hospital District's customary policies and its

normal payroll schedule.  *Doc. 24* at 21.  If the Hospital District scheduled Defendant for

additional shifts to cover for absences, his compensation was based upon the Hospital

District's fee schedule.  *Id.* at 22.  The Hospital District, not Defendant, billed for and

collected the fees generated by the medical services that Defendant rendered.  *Id.* at 14.

Plaintiff argues, notwithstanding this compensation structure, that Defendant was an independent contractor, in part, because his employment was only for six months and he worked unusual hours, seven days on and seven days off. *Doc. 28* at 9–10. Length of employment, however, is only significant because of the inference that "if the time of employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him." Restatement (Second) of Agency § 220 cmt. j. Here, though, even if six months were considered a short period of time, the inference of a lack of control does not exist as the Physician Employment Agreement expressly subjects many aspects of Defendant's performance to the control of the Hospital District. *See doc. 24* at 9, 15. As for Defendant's unusual work schedule, it is further evidence for the control that the Hospital District had over him, not for his independence—Defendant was not free to set his own work schedule, but rather had to work seven days a week every other week because that is what his contract dictated. *See id.* at 22.

     *e.* *The Overlap Between the Medical Services that Defendant Provided and the Regular Business of the Hospital District Indicates that He Was an Employee*

The work that Defendant provided the Hospital District was essential to its regular business, which supports a finding that he was an employee, not an independent contractor. The business of the Hospital District is the operation of "healthcare centers in Lovington, Tatum, and Hobbs, New Mexico." *Doc. 24* at 7. It contracted with Defendant "to employee [sic] a physician as an employee to serve the

health needs of the communities that [it] serves." *Id.* Defendant "render[ed] full-time professional medical services in the Specialty…" of Internal Medicine to patients from these communities. *Id.* at 8.

      *f.*   *The Language in the Physician Employment Agreement Shows that Defendant and the Hospital District Intended to Create an Employment Relationship*

The provisions of the Physician Employment Agreement demonstrate that the intent of Defendant and the Hospital District was to create an employment relationship, not an independent contractor one. While the terms that an employment contract uses to define the status of an individual do not determine whether he is an employee or an independent contractor, they are relevant and material as to the intent of the parties to the contract. *See Blea*, 120 P.3d at 436. Here, Defendant's contract is an employment agreement and refers to him exclusively as an employee. *See doc. 24* at 7, 8, 11. This clear expression shows that the parties intended for Defendant to be an employee of the Hospital District, not an independent contractor for it.

Plaintiff argues that Defendant cannot be an employee of the Hospital District because the indemnification clause in the Physician Employment Agreement is inconsistent with the TCA. *See doc. 28* at 10. The indemnification clause requires Defendant to indemnify the Hospital District from "any and all claims, expenses, judgments and costs … resulting from any audit, investigation, or other claim made by any third party … concerning improper acts of [Defendant] violating Hospital [District] policy while an employee of Hospital [District], where such acts or omissions were

committed by [Defendant] after [Defendant] was advised by Hospital [District] to modify such behavior, treatment style or pattern of conduct." *Doc. 24* at 10.  The TCA, however, bars governmental entities like the Hospital District from obtaining contribution, indemnity, or subrogation from a public employee "unless the public employee has been found to have acted fraudulently or with actual intentional malice …." N.M. Stat. Ann. § 41-4-17(A).  At most, the inclusion of a provision that may be unenforceable if Defendant is a public employee supports an inference that the parties did not intend for him to be an employee.  In this case, however, this weak inference does not overcome the parties' other clear expressions that they intended Defendant to be an employee rather than an independent contractor, let alone the balance of the other Restatement factors that favor a finding consistent with this intent.

* * *

Applying the factors in the Second Restatement of Agency to the totality of the undisputed facts about Defendant's job, the Court concludes that Defendant was an employee of the Hospital District, a governmental entity, when he treated and discharged Ms. Naegele.  In fact, viewed in their entirety, the Court finds that the circumstances of Defendant's employment are substantially similar to those of the defendant doctor in *Blea* whom the New Mexico Supreme Court found to be an employee, rather than an independent contractor.  *See* 120 P.3d at 436–37.  Like the doctor in *Blea*, Defendant had to work at specific times and perform other duties and

services as requested by the Hospital District. *See id; doc 24* at 22. Like the hospital in *Blea*, the Hospital District compensated Defendant with a salary, benefits, and insurance, handled all the billing related to the medical services that Defendant performed, and provided all of Defendant's supplies, equipment, and support staff. *See Blea*, 120 P.3d at 436–37; *doc. 24* at 14–15, 21.

### 2. *The TCA Statute of Limitations Applies Where a Public Employee is Also a Qualified Health Care Provider*

The determination that Defendant is a public employee would ordinarily result in the application of the TCA's two-year statute of limitations. *See* N.M. Stat. Ann. § 41-4-15. Nonetheless, Plaintiff contends that this limitations period is supplanted by the three-year statute of repose in the MMA where the defendant is a public employee *and* a qualified health care provider. *See doc. 28* at 12–15. As the Supreme Court has repeatedly recognized, both statutes of limitations and statutes of repose "'are mechanisms used to limit the temporal extent or duration of liability for tortious acts,' but 'each has a distinct purpose.'" *Cal. Pub. Emps.' Retirement Sys. v. ANZ Secs., Inc.*, 137 S.Ct. 2042, 2049 (2017) (quoting *CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2182 (2014)). For Plaintiff's contention to prevail, therefore, Plaintiff must not only persuade the Court that the MMA statute of repose applies, but that it displaces the TCA statute of limitations such that the TCA limitation does not apply. Plaintiff does not do so.

Under New Mexico law, the guiding principle for a court construing a statute "is to determine and give effect to legislative intent." *El Paso Elec. Co. v. N.M. Pub.*

*Regulation Comm'n*, 246 P.3d 443, 446 (N.M. 2010) (quoting *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 168 P.3d 105, 112 (N.M. 2007)). "The plain language of a statute is the primary indicator of legislative intent." *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 992 P.2d 860, 864 (N.M. 1999) (quoting *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 970 P.2d 599, 600 (N.M. 1998)). "In ascertaining legislative intent, the provisions of a statute must be read together with other statutes *in pari materia* under the presumption that the legislature acted with full knowledge of relevant statutory and common law." *New Mexico ex rel. Quintana v. Schnedar*, 855 P.2d 562, 564 (N.M. 1993) (citing *Inc. Cnty. of Los Alamos v. Johnson*, 776 P.2d 1252, 1253 (N.M. 1989)). "[T]wo statutes covering the same subject should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals." *Id.* at 564–65 (internal citations omitted). However, "to resolve an otherwise irreconcilable conflict," the "statute dealing with a specific subject will be considered an exception to, and given effect over, the more general statute." *Ping Lu v. Educ. Trust Bd. of N. M.*, 293 P.3d 186, 190 (N.M. Ct. App. 2012) (quoting *Albuquerque Commons P'ship v. City Council of City of Albuquerque*, 248 P.3d 856, 862 (N.M. 2011), *Stinbrink v. Farmers Ins. Co. of Ariz.*, 803 P.2d 664, 667 (N.M. 1990)) and *State v. Santillanes*, 27 P.3d 456, 469 (N.M. 2005)).

Numerous points demonstrate that the New Mexico legislature intended for the TCA statute of limitations to apply even where a public employee is also a qualified

health care provider.  Not only is this the best reading of the statutes' texts but it is the
outcome that best conforms with the purposes expressed by the New Mexico
Legislature when it passed these statutes.

   a.  *The Plain Language of the TCA and MMA Establishes that TCA Statute of
       Limitations Applies Where a Public Employee is Also a Qualified Health Care
       Provider*

   The best reading of the plain language of the TCA and MMA is that the TCA
statute of limitations applies where a public employee is also a qualified health care
provider.  The TCA explicitly states that it is "the *exclusive remedy* against a … public
employee for any tort for which immunity has been waived under the [TCA] and no
other claim, civil action or proceeding for damages, by reason of the same occurrence,
may be brought … against the public employee … whose act or omission gave rise to
the suit or claim."  N.M. Stat. Ann. § 41-4-17(A) (emphasis added).  It also declares that
the intent of the New Mexico Legislature enacting it was that "public employees shall
*only* be liable within the limitations of the [TCA] and in accordance with the principles
established in that act."  *Id.* § 41-4-2(A) (emphasis added).

   As expressly set forth in the TCA's text, these principles forever bar "actions
against a … public employee in tort," notwithstanding the statute's waiver of sovereign
immunity from "liability for damages resulting from … wrongful death … caused by
the negligence of public employees licensed by the state or permitted by law to provide
health care services," "unless such action is commenced within two years after the date

of occurrence resulting in loss, injury, or death." N.M. Stat. Ann. §§ 41-4-10, 41-4-15. Plaintiff's argument is that it should benefit from the TCA's waiver of sovereign immunity without having to satisfy its explicit limitations. Such an outcome cannot be reconciled with the TCA's plain language.

In an attempt to do so, Plaintiff creates a false equivalency between the TCA and the MMA by arguing that the latter provides an exclusive remedy for actions against a qualified health care provider. *See doc. 28* at 12–13. Notably, however, the MMA does not contain any exclusivity clause akin to that of the TCA, but rather a clause that limits the benefits provided by the MMA to qualified health care providers.[8] *See* N.M. Stat. Ann. § 41-5-5(C). The plain language of this clause does not purport to bar a qualified health care provider from any benefits that he may accrue under other statutory schemes, such as the TCA if he is a public employee. *See id.* Any "exclusivity" implied by MMA provisions is simply not equivalent to that explicitly stated in the TCA. *See Cozart v. Town of Bernalillo*, 663 P.2d 713, 715 (N.M. Ct. App. 1983) (Exclusivity clause in TCA "is so broad in its terms and so clear and explicit in its words as to show it was intended to cover the whole subject." (quoting *Galvan v. City of Albuquerque*, 531 P.2d 1208 (N.M. 1975)).

---

[8] Plaintiff appears to recognize this important distinction. As it must, it recognizes that the TCA provides the "exclusive remedy against a … public employee for any tort for which immunity has been waived." *Doc. 28* at 12 (quoting N.M. Stat. Ann. § 41-4-17(A)). By comparison, when describing the exclusivity of the MMA, Plaintiff claims only that "the benefits provided by MMA are exclusive to qualified healthcare providers and serve to limit plaintiff's claims against them." *Id.* at 13 (citing N.M. Stat. Ann. § 41-5-5(C)).

Moreover, while the same legislature passed both the TCA and the MMA within a few months of each other, the TCA makes no exception for qualified health care providers and no provision of the MMA mentions the term public employee, let alone indicates that it supplants TCA protections.  *See* N.M. Stat. Ann. §§ 41-4-1 to -30, 41-5-1 to -29.  Under these circumstances, it seems particularly unlikely that the New Mexico Legislature intended to *sub silentio* create an exception to the TCA requirements where the public employee was also a qualified healthcare provider.

> b. *Giving a Public Employee, Who Is Also a Qualified Health Care Provider, the Benefit of the TCA Statute of Limitations Is Consistent with the Legislative Intents Behind Both the MMA and the TCA.*

The policies and purposes of the TCA and the MMA support giving a public employee, who is also a qualified health care provider, the benefit of the TCA statute of limitations, rather than supplanting it with the MMA statute of repose.  Unlike the latter approach, the former advances the legislative interest in limitations on the time in which a lawsuit may be brought without undermining other legislative interests.

The New Mexico Legislature enacted both statutory schemes in 1976 to implement particular legislative policies.  *See Maestas v. Zager*, 105 P.3d 317, 323 (N.M. Ct. App. 2004), *rev'd on other grounds*, 151 P.3d 141 (N.M. 2007).  The Legislature passed the TCA in response to the New Mexico Supreme Court abolishing the common law doctrine of sovereign immunity thereby permitting tort actions to be maintained against public employees.  *See Cole v. City of Las Cruces, N.M.*, 657 P.2d 629, 630 (N.M. 1983).  It

restored public employees' tort immunity except for eight classes of activity, *id.*, and limited the liability that it preserved by granting public employees certain procedural defenses, including the two-year statute of limitations, *see* N.M. Stat. Ann. § 41-5-15.  In doing so, the Legislature sought "to protect the public treasury, to enable the government to function unhampered by the threat of legal actions that would inhibit the administration of traditional state activities, and to enable the government to effectively carry out its services."  *Maestas*, 105 P.3d at 323 (citing *Garcia v. Albuquerque Pub. Sch. Bd. of Educ.*, 622 P.2d 669, 702 (N.M. Ct. App. 1980)).

By comparison, the New Mexico Legislature passed the MMA to manage a perceived medical malpractice crisis.  *Cummings v. X-Ray Assocs. of N.M., P.C.*, 918 P.2d 1321, 1333 (N.M. 1996) (citing *Roberts v. Sw. Cmty. Health Servs.*, 837 P.2d 442, 443 (N.M. 1992) and *Wilschinsky v. Medina*, 775 P.2d 713, 718 (N.M. 1989)).  It divided health care providers licensed to practice in New Mexico into qualified and unqualified classes and granted the former certain procedural defenses to malpractice claims, including the three-year statute of repose.  *See Roberts*, 837 P.2d at 444, 446–47.  The New Mexico Legislature enacted this statute after "conclud[ing] that the potential for a malpractice suit being filed long after the act of malpractice was one of the reasons that insurance carriers were withdrawing from medical malpractice liability coverage."  *Cummings*, 918 P.2d at 1333.

The policies motivating these enactments both favor limiting the time in which a lawsuit can be brought. Applying the TCA statute of limitations to claims against a public employee who is also a qualified health care provider is consistent with this legislative preference.

Plaintiff, however, argues to the contrary suggesting that it would undermine the policies of the MMA by causing qualified health providers to "lose the benefit of a hard deadline for claims-accrual," *doc. 28* at 14. This argument fails to recognize that applying the TCA statute of limitations and the MMA statute of repose when a defendant is a public employee and a qualified health care provider is not necessarily an either-or scenario: each statute limits the time for bringing a lawsuit in its own fashion; but they are not in conflict. The TCA statute of limitations applies the discovery rule in that it starts to run "when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Maestas v. Zager*, 152 P.3d 141, 147 (N.M. 2007). The MMA statute of repose follows the occurrence rule in that it starts to run when the act of malpractice occurs and "terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." *Id.* at 145; *Cummings*, 918 P.2d at 1335. Both, therefore, could apply to a medical malpractice lawsuit.[9] *See Cal. Pub. Emps.' Retirement Sys.*, 137 S.Ct. at 2045 ("The pairing of a shorter

---

[9] The Court need not, and does not, express any opinion about whether every medical malpractice plaintiff suing a publicly employed doctor must satisfy all the limitations of both the MMA and the TCA.

statute of limitations and a longer statute of repose is a common feature of statutory time limits."); *Saludes v. Ramos*, 744 F.2d 992, 996 (3d Cir. 1984) (holding that a plaintiff bringing a medical malpractice claim against a governmental entity is required to comply with both the tort claims act and the medical malpractice act of the Virgin Islands), *superseded by statute on other grounds*, Revised Organic Act of 1984, Pub. L. 98-454, 98 Stat. 1737 and Act No. 6687 of Oct. 29, 2004, 2004 V.I. Sess. Laws 179, *as recognized in Pichardo v. V.I. Comm'r of Lab.*, 613 F.3d 87, 93–98 (3d Cir. 2010).

Supplanting the TCA's statute of limitations with the MMA's statute of repose where a public employee is a qualified health care provider, however, creates outcomes that are inconsistent with legislative intent.  First, under Plaintiff's logic, supplanting occurs once a public employee or entity seeks and obtains qualified health care provider status.  Given the legislature's clear intent in the MMA to incentivize health care providers to take the steps necessary to obtain this status, it seems perverse to have any provider that is public employee or public entity stripped of their protections under the TCA by taking such steps.

Second, supplanting the TCA statute of limitations in this manner would disrupt the careful balance that the New Mexico Legislature struck in the TCA between the private interest in remedying a wrong and the public interest in protecting effective government administration and the public treasury.  *See Maestas*, 105 P.3d at 323. Under Plaintiff's logic, any public health care provider could, on his own initiative,

disrupt this balance and change the limitations period that applies to his malpractice

defense by the unilateral act of filing proof of malpractice insurance with the New

Mexico superintendent of insurance.  *See* N.M. Stat. Ann. § 41-5-5(A) (A physician

becomes a qualified health care provider under the MMA by "filing proof with the

superintendent that [he] is insured by a policy of malpractice liability insurance issued

by an authorized insurer in the amount of at least two hundred thousand dollars

($200,000) per occurrence or … by having continuously on deposit the sum of six

hundred thousand dollars ($600,000) in cash with the superintendent …and pay[ing]

the surcharge assessed on health care providers by the superintendent....").

Finally, Plaintiff's argument would effectively bring nearly all liability arising

under N.M. Stat. Ann. § 41-4-10 outside the scope of the two-year TCA statute of

limitations, assuming that public health care providers regularly carry malpractice

insurance or purchase it for their employees (coverage expressly contemplated by the

TCA in N.M. Stat. Ann. §§ 41-4-20(C), 41-4-22, 41-4-29).  "Statutes should be construed

so as to avoid illogical results" like these three.  *See Regents of Univ. of N.M. v. Armijo*,

704 P.2d 428, 429 (N.M. 1985) (citation omitted).

Applying the TCA statute of limitations to claims against a public employee who

is also a qualified health care provider advances the preference of the New Mexico

Legislature for limitations on the time in which a lawsuit may be brought without

26

creating any illogical results.  As such, it is the outcome that is most consistent with the legislative intents behind the MMA and the TCA.

       c.   *Plaintiff's Remaining Arguments in Favor of the MMA Statute of Repose Supplanting the TCA Statute of Limitations are Unconvincing.*

Plaintiff's remaining arguments are unpersuasive.  It argues that the MMA statute of repose should supplant the TCA statute of limitations because it is the more specific statute.  As an initial matter, it can be debated whether the MMA is the more "specific" statute in this context.  The MMA is materially narrower than the TCA as it addresses a single type of claim—medical negligence torts—yet is also quite broad in that it applies not only to individual doctors, but also hospitals and practice groups. The TCA, while broader with respect to the types of claims to which it applies, is restricted to the conduct of public employees and government entities for whom it waives sovereign immunity subject to explicit limitations.  Regardless, the general/specific rule of statutory construction applies only "to resolve an otherwise irreconcilable conflict."  *Santillanes*, 27 P.3d at 469.  As noted above, there is no apparent reason (and Plaintiff provides none) why both the TCA statute of limitations and the MMA statute of repose cannot apply to the instant case.

Finally, Plaintiff's briefing could be read to argue that the MMA's requirement of an application to, and decision from, the Medical Review Commission makes it impossible to comply with the TCA statute of limitation.  *See doc. 28* at 12–15.  To the extent this argument is raised, the Court rejects it.  Most obviously, in the instant case,

Plaintiff does not dispute it was aware of its cause of action no later than March 1, 2017. *See id.* at 4.  Given that the subsequent review by the Commission took less than four months, *see id.* at 4–5; *doc. 28-2*, Plaintiff had ample time to request such a review, receive its decision, and file a lawsuit within the TCA statute of limitations.  Moreover, this calculation does not contemplate the possibility of equitable tolling if the review process were unreasonably long.[10]  *See Armijo v. Regents of Univ. of N.M.*, 704 P.2d 437, 441–42 (N.M. Ct. App. 1984) (holding that the equitable doctrine of fraudulent concealment tolls the TCA statute of limitations) *rev'd in part on other grounds*, 704 P.2d 428 (N.M. 1985).  *Cf.* N.M. Stat. Ann. § 41-5-22 (tolling the MMA statute of repose "upon submission of the case for the consideration of the [Medical Review Commission] … until thirty days after [the Commission's] final decision is entered … and a copy is served upon the claimant and his attorney by certified mail").

* * *

In conclusion, the Court holds that it was not the New Mexico Legislature's intent to have the TCA's statute of limitations supplanted by the MMA's statute of repose in a medical malpractice lawsuit against a publicly employed doctor who is a qualified health care provider.  Such an outcome is inconsistent with not only the plain

---

[10] Plaintiff does not argue that equitable tolling would save his case from the TCA statute of limitations if it applies.  *See generally doc. 28*.  As such the Court need not, and does not, rule on whether the TCA statute of limitations is subject to equitable tolling during the pendency of the Medical Review Commission's adjudication of a claim.

language of the TCA, but also the legislative interests and preferences of both the TCA

and the MMA.  As Defendant is a public employee, the TCA statute of limitations

applies to Plaintiff's claims.

### 3.  *Defendant Is Not Estopped from Raising the TCA Statute of Limitations Defense*

Plaintiff's final argument is that Defendant is estopped from raising the TCA

statute of limitations defense.  Under the doctrine of equitable estoppel, a party may not

assert a statute of limitations defense if it "(1) made a statement or action that amounted

to a false representation or concealment of material facts, or intended to convey facts

that are inconsistent with those a party subsequently attempts to assert, with (2) the

intent to deceive the other party, and (3) knowledge of real facts other than [those]

conveyed."  *Blea*, 120 P.3d at 438.  "The party arguing estoppel must (1) not know the

real facts, and (2) change his or her position in reliance on the estopped party's

representations."  *Id.* (citing *Lopez v. New Mexico*, 930 P.2d 146 (N.M. 1996)).[11]

Plaintiff points to no "statement or action" by Defendant which could qualify

under this high standard.  Plaintiff instead relies upon silence and inaction noting that

Defendant did not *sua sponte* declare his public employment.  As Plaintiff puts it,

---

[11] Defendant, for his part, argues that there is no basis for equitable estoppel because governmental
immunity is jurisdictional and so may be raised at any time.  *See* doc. *31* at 11 (citations omitted).  The
jurisdictional issues related to governmental immunity, however, arise where the conduct of a defendant
public entity, employee, or official does not fall under one of the eight classes of activities for which the
TCA has waived immunity.  *See Begay v. New Mexico*, 723 P.2d 252, 255–57 (N.M. Ct. App. 1985), *rev'd on
other grounds sub nom. Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986).  These jurisdictional issues are not
implicated here because Defendant's alleged negligent conduct clearly falls within the scope of the
waiver in N.M. Stat. Ann. § 41-4-10.

Defendant "made no effort … until [his] answer was filed … to assert that he believed that he was a public employee entitled to the two-year statute of limitations" but rather "proceeded through the MRC process, presented a defense, and waited for positive results." *Doc. 28* at 16.  It seems apparent that Defendant's general silence and/or inaction on the matter cannot support equitable estoppel.

However, the argument regarding Defendant's conduct before the Medical Review Commission deserves further comment.  Notably, Defendant's employment status is irrelevant to the Commission because the Commission may only decide two issues: "(1) whether there is substantial evidence that the acts complained of occurred and that they constitute malpractice; and (2) whether there is a reasonable medical probability that the patient was injured thereby."  *See* N.M. Stat. Ann. § 41-5-20(A).   The Commission's rules explicitly provide that although a physician is supposed to provide a meaningful response to allegations of malpractice, "a recitation of affirmative defenses is not required." *Meza v. Topalovski*, 268 P.3d 1284, 1288 (N.M. Ct. App. 2011).  Given its lack of relevance and the Commission's rules, the fact that Defendant did not raise the defense of public employment cannot reasonably be considered "a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert." *Blea*, 120 P.3d at 438.  Moreover, Defendant included in his answer to the Commission that "Defendant hereby serves notice that he reserves the right to raise, in any lawsuit

against Defendant, any and all legal defenses available to him ….."  *See doc. 31* at 14.

Such notice significantly undermines the contention that Defendant's failure to raise the

public employment defense was done with "the intent to deceive the other party." *Blea*,

120 P.3d at 43.  Finally, and most importantly, Defendant's conduct before the

Commission occurred in May 2019, two months after the TCA statute of limitations had

expired.  As a result, even if Defendant's representations before the Commission were a

concealment of material facts intended to deceive, Plaintiff still cannot show that it

changed its position in reliance on these representations.

Plaintiff compares its situation to that of the plaintiffs in *Hagen v. Faherty*.  *See doc.*

*28* at 16–17 (citing 66 P.3d 974, 978–79 (N.M. Ct. App. 2003)).  But, the facts in *Hagen* are

easily distinguishable.  There, while the defendant doctor was in fact a public employee

of University of New Mexico Hospital (hereinafter "UNMH"), the doctor treated the

patient in a private facility.  *Hagen*, 66 P.3d at 975–76.  The doctor's identification badge

listed the private facility and not UNMH.  *Id*. at 976.  All patient records were held at

the private facility.  *Id*.  In the face of these patient-facing appearances, nothing in the

facility's building indicated that patients were being served by UNMH employees and

nothing in the patient's records indicated that the doctor was employed by UNMH.  *Id*.

at 976.  Consequently, the New Mexico Court of Appeals concluded that "[b]y choosing

to place its physician … at … a private institution and not identify him as a public

employee working in a public capacity, the state engaged in conduct that conveyed the

indisputable impression to persons wishing to assert a claim that [the defendant] was an employee of the private institution." *Id*. at 978.

Plaintiff, however, offers no evidence that the Hospital District or Defendant held itself out as anything but what they were, a governmental entity and a doctor who worked there.  What little evidence is in the record about the representation of Defendant's relationship with the Hospital District indicates that the Hospital District held him out as its employee. *See doc. 31* at 18.  Rather than offering evidence that Defendant held himself out as something other than an employee of the Hospital District, Plaintiff attempts to transfer the evidentiary burden to Defendant.  *See doc. 28* at 16 (arguing that Defendant "presents no evidence to establish that [Ms. Naegele] or her family knew that he was a public employee or that he held himself out as a public employee in any way").  The burden, however, falls on Plaintiff to prove the elements of equitable estoppel, not on Defendant to disprove them.  *See Westerman v. City of Carlsbad*, 237 P.2d 356, 359 (N.M. 1951).

In short, Plaintiff fails to meet his burden to establish that Defendant is equitably estopped from raising the TCA statute of limitations defense.  It offers no evidence that Defendant intended to deceive it via a statement or an action that amounted to a false representation or concealment of material facts or that it changed its position in reliance on Defendant's representations.  Defendant, therefore, may raise this defense.

## IV.     CONCLUSION

The TCA statute of limitations bars all the claims raised in Plaintiff's complaint because Plaintiff failed to file it within two years of discovering the occurrence and cause of Ms. Naegele's death.  Defendant was a public employee of, not an independent contractor for, the Nor-Lea Hospital District.  Thus, while Defendant was also a qualified health care provider when he treated and discharged Ms. Naegele, the two-year statute of limitations in the TCA applies to Plaintiff's claims.  Finally, Defendant is not estopped from asserting this statute of limitations defense because he was not required to raise it before the Medical Review Commission and Plaintiff has not shown that Defendant falsely represented or concealed of material facts or otherwise intended to convey facts that are inconsistent with those he is now asserting.

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (*doc. 24*) is GRANTED, and all claims in Plaintiff's Complaint are DISMISSED with prejudice.

**IT IS SO ORDERED**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**